## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PMGI Holdings Inc., *et al.*, [1] | Case No. 13-12404 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: October 11, 2013 at 10:00 a.m.** |
| | **Objection Deadline: October 4, 2013 at 4:00 p.m.** |

### APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF AKERMAN SENTERFITT LLP AS SPECIAL CORPORATE AND CONFLICTS COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* AS OF THE PETITION DATE

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby submit this application (the "**Application**") pursuant to sections 327(e) and 328(a) of title

11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules

2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

and Local Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order:

(a) authorizing and approving the retention and employment of Akerman Senterfitt LLP

("**Akerman**"), as special corporate and conflicts counsel to the Debtors *nunc pro tunc* as of the

Petition Date, and (b) providing any additional relief required in order to effectuate the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Blue Hen Group Inc. (9667), Argus Payments Inc. (4661), Big Island Technology Group, Inc. (9795), Confirm ID, Inc. (7020), Danni Ashe, Inc. (5271), Fastcupid, Inc. (7869), Fierce Wombat Games Inc. (2019), FriendFinder California Inc. (2750), FriendFinder Networks Inc. (0988), FRIENDFINDER VENTURES INC. (3125), FRNK Technology Group (7102), General Media Art Holding, Inc. (2637), General Media Communications, Inc. (2237), General Media Entertainment, Inc. (2960), Global Alphabet, Inc. (7649), GMCI Internet Operations, Inc. (7655), GMI On-Line Ventures, Ltd. (7656), Interactive Network, Inc. (5941), Magnolia Blossom Inc. (8925), Medley.com Incorporated (3594), NAFT NEWS CORPORATION (4385), Penthouse Digital Media Productions Inc. (1056), Penthouse Images Acquisitions, Ltd. (9228), PerfectMatch Inc. (9020), Playtime Gaming Inc. (4371), PMGI Holdings Inc. (2663), PPM Technology Group, Inc. (9876), Pure Entertainment Telecommunications, Inc. (9626), Sharkfish, Inc. (1221), Snapshot Productions, LLC (7091), Streamray Inc. (2716), Streamray Studios Inc. (1009), Tan Door Media Inc. (1100), Traffic Cat, Inc. (1223), Transbloom, Inc. (1168), Various, Inc. (7762), Video Bliss, Inc. (6760), West Coast Facilities Inc. (4751), XVHUB Group Inc. (9401).   The Debtors' business address is 6800 Broken Sound Parkway NW, Suite 200, Boca Raton, FL 33487.

foregoing.  The facts and circumstances supporting this Application are as set forth herein and in the *Declaration of Bradley D. Houser in Support of the Application of the Debtors to Employ and Retain Akerman Senterfitt LLP as Special Corporate Counsel and Conflicts Counsel to the Debtors Nunc Pro Tunc to the Petition Date* (the **"Houser Declaration"**), a true and correct copy of which is attached hereto as **Exhibit "A"**, and the *Statement under Federal Rule of Bankruptcy Procedure 2016 and Section 329 of the Bankruptcy Code* (the **"2016 Statement"**), a true and correct copy of which is attached hereto as **Exhibit "B"**, which are each incorporated herein by reference.  In further support of the Application, the Debtors respectfully state as follows:

### Status of the Case

1.      On September 17, 2013 (the **"Petition Date"**), the Debtors commenced these cases (the **"Chapter 11 Cases"**) by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating and managing their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these Chapter 11 Cases.

### Jurisdiction, Venue, and Statutory Predicates

4.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief sought herein are sections 327(e) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b) and Local Rule 2014-1.

## Background

6.      The Debtors are a leading internet technology and entertainment company providing services in the rapidly expanding markets of adult dating, social networking and web-based video sharing and run several of the most heavily-trafficked websites in the world. The Debtors maintain a number of social networking and entertainment sites and offer a wide variety of online products and services which appeal to members of diverse cultures and internet groups. The Debtors' services allow customers to socialize and connect with each other and groups, based on various interests, including ethnic, cultural, and entertainment interests, and to enjoy the Debtors' entertainment oriented content. The websites operated by the Debtors include social networking, online personals, live and recorded video, online chat rooms, instant messaging, photo and video sharing, blogs, message boards, email and premium content websites. The Debtors also produce and distribute original pictorial and video content, license the globally recognized Penthouse brand to a variety of consumer product companies and entertainment venues, and publish several branded men's lifestyle magazines.

7.      Because of the internet-based nature of their businesses, the Debtors' operations reach around the globe and have an international presence. The Debtors operate their businesses through forty (40) subsidiaries located in the United States and have fifteen (15) related non-debtor affiliated entities. The Debtors have approximately 435 employees and, through their network, utilize a number of contracting firms and independent contractors to conduct their businesses and obtain their global reach. The Debtors and their affiliates have more than 220 million members and operate in more than 200 countries. The Debtors' total revenue for the four consecutive fiscal quarters ended June 30, 2013 was $293.70 million.

8.      In addition to normal course costs of operations, market development and product enhancements, the Debtors have long term debt, including three tranches with maturities on September 30, 2013 and April 30, 2014.  Those tranches include the (i) 14% Senior Secured Notes due 2013 (the "**Existing First Lien Notes**") issued pursuant to that certain Indenture (as amended, modified or supplemented prior to the date hereof, the "**First Lien Indenture**") dated as of October 27, 2010, (ii) the 11.5% Non-Cash Pay Secured Notes Due 2014 (the "**Non-Cash Pay Second Lien Notes**") issued pursuant to the Indenture dated as of October 27, 2010 (as amended, modified or supplemented prior to the date hereof, the "**Non-Cash Pay Second Lien Indenture**") and (iii) the 14% Cash Pay Secured Notes Due 2013 (the "**Cash Pay Second Lien Notes,**") and, collectively with the Existing First Lien Notes and the Cash Pay Second Lien Notes, the "**Senior Debt**") issued pursuant to the Indenture dated as of October 27, 2010 (as amended, modified or supplemented prior to the date hereof, the "**Cash Pay Second Lien Indenture**").

9.      Despite continuing member interest and high volume traffic, the Debtors did not make certain payments to the holders of Existing First Lien Notes and Cash Pay Second Lien Notes which constituted a default under their respective indentures.   Working with certain holders of their Senior Debt, the Debtors have undertaken to restructure their balance sheet and, on September 16, 2013, the Debtors, certain holders of the Existing First Lien Notes and certain holders of the Non-Cash Pay Second Lien Notes (the "**Senior Debt Holders**") entered into the Transaction Support Agreement (the "**TSA**").  The TSA provides the relevant terms to effect the Recapitalization Transaction (as defined in the TSA).  As a result, the Debtors filed these Chapter 11 Cases in order to implement the Recapitalization Transaction as contained in the TSA.

10.     A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Ezra Shashoua in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief*, filed on the Petition Date and incorporated herein by reference.

### Relief Requested

11.     By this Application, the Debtors respectfully request that this Court enter an order authorizing them to employ and retain Akerman as special corporate and conflicts counsel in these Chapter 11 Cases *nunc pro tunc* as of the Petition Date to represent the Debtors in general corporate matters and in matters that the Debtors' lead bankruptcy counsel, Greenberg Traurig, LLP ("**Greenberg**"), may be unable to handle due to conflicts of interest.  Since January 2011, Akerman has been the general outside corporate counsel for the Debtors.  The continued operation of the Debtors' existing business during these Chapter 11 Cases necessitates the employment of special corporate and conflicts counsel.

12.     Because of Akerman's extensive experience and knowledge in the fields of corporate law, business litigation and bankruptcy, Akerman is well-suited for the type of representation that the Debtors require.

13.     Greenberg and Akerman will carefully coordinate their efforts and clearly delineate their duties to prevent any duplication of efforts.  The Debtors believe that rather than resulting in extra expense to their estates, the efficient coordination of efforts between Akerman and Greenberg will greatly add to the effective administration of these Chapter 11 Cases.  Thus, the Debtors believe that Akerman's employment is in the best interest of the Debtors, their estates, and their creditors.

## Basis for Relief

14.    Section 327(e) of the Bankruptcy Code permits the employment of an attorney for a special purpose when the attorney has previously represented the debtor, if such employment is in the best interests of the debtor's estate.   Specifically, section 327(e) provides that a debtor, subject to Court approval:

> [M]ay employ, for a specified special purpose, other than to represent the [debtor] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

15.    Moreover, Rule 2014(a) of the Bankruptcy Rules requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

16.    The Debtors have selected Akerman as special corporate and conflicts counsel because of Akerman's extensive experience in business litigation and their experience representing the Debtors in connection with corporate matters.   Akerman is a prominent law firm with over 550 lawyers in twenty (20) cities, including New York, Los Angeles, and Miami. Akerman also has a track record of providing the Debtors with effective and efficient legal services.   The Debtors believe that both the interruption and duplicative costs involved in obtaining substitute counsel at this juncture would be extremely harmful to the Debtors and their estates.   If the Debtors are required to retain counsel other than Akerman in connection with the

specific matters upon which the firm's advice is sought, the Debtors, their estates, and all parties-in-interest would be unduly prejudiced by the time and expense required to replicate Akerman's familiarity with the Debtors and the intricacies of their corporate matters.

17.    For the foregoing reasons, Akerman is the best qualified law firm to provide the specialized legal services sought by the Debtors.  Moreover, based on information from the Houser Declaration and the 2016 Statement, the Debtors believe that Akerman does not represent or hold any interest adverse to the Debtors or their estates on the matters for which Akerman is to be employed.  Accordingly, the Debtors submit that the immediate retention of Akerman is in the best interests of the Debtors and their estates, their creditors, and all other parties-in-interest.

### Scope of Employment

18.    The professional services that Akerman expects to render to the Debtors include, but shall not be limited to, the following:

   a.  providing legal advice regarding corporate law issues to the Debtors in connection with the Debtors' ongoing business and bankruptcy cases, in coordination with Greenberg Traurig;

   b.  providing legal advice to the Debtors with respect to legal disputes in which conflicts of interest prevent representation by the Debtors' lead bankruptcy counsel; and,

   c.  negotiating, drafting, and pursuing all litigation and documentation necessary in conjunction with such legal disputes.

Subject to this Court's approval of this Application, Akerman has indicated that it is willing to serve as special corporate and conflicts counsel to the Debtors in these Chapter 11 Cases to perform the services described above.

### Akerman's Disclosure Concerning Conflicts of Interest

19.    Akerman has informed the Debtors, as set forth in more detail in the Houser Declaration and subject to any exceptions contained therein or in the schedules thereto, that

Akerman does not hold or represent any interest adverse to the Debtors or to their estates with respect to the corporate and conflicts legal work, for which Akerman is to be employed. All information with respect to Akerman's connections with the Debtors, their creditors, any parties-in-interest, their respective attorneys and accountants, the United States Trustee, any person employed in the office of the United States Trustee and the bankruptcy judge assigned to these cases are set forth in the Houser Declaration.

20.     Upon receipt from the Debtors of additional possible parties-in-interest, Akerman will conduct reviews of its files to ensure that it continues to neither hold nor represent any interest adverse to the Debtors or to their estates with respect to the corporate and conflicts work in connection with which Akerman is to be employed. To the extent any information disclosed herein or in the Houser Declaration requires amendment or modification upon Akerman's completion of further review or as additional information becomes available, a supplemental declaration will be submitted to this Court reflecting such amended or supplemental information.

21.     The Debtors believe that it is necessary and in the best interest of their estates and creditors to employ and retain Akerman as their special corporate and conflicts counsel to render professional services on their behalf in regard to corporate legal work and legal work that the Debtors' lead bankruptcy counsel, Greenberg, may be unable to handle due to conflicts of interest.

### Professional Compensation

22.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. *See* 11 U.S.C. § 328(a). Akerman intends to apply for compensation for professional services rendered in connection with these Chapter 11 Cases subject to the approval

of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy

Rules, Local Rules, and orders of this Court, on an hourly basis, plus reimbursement of actual,

necessary expenses and other charges incurred by Akerman.    Akerman submits the 2016

Statement attached hereto as **Exhibit "B"** pursuant to Rule 2016 of the Bankruptcy Rules and

section 329 of Bankruptcy Code and incorporated herein by reference.  Akerman has advised the

Debtors that the current hourly rates applicable to the principal attorneys and paralegals proposed

to represent the Debtors are as follows:

| | |
|---|---|
| Bradley Houser | $695 |
| Andrea Hartley | $545 |
| Dean Freitag | $540 |
| Michael Francis | $525 |
| Shane Segarra | $285 |
| Esther Forbes | $220 |

23.      Other attorneys and paralegals will render services to the Debtors as needed.  As

of the date of the Houser Declaration, Akerman's current hourly rates for this matter range from

$220 to $695 per hour.  The Debtors understand that the hourly rates set forth above are subject

to periodic adjustments in the ordinary course of business.

24.      The hourly rates set forth above are Akerman's standard hourly rates for work of

this nature.  These rates are set at a level designed to fairly compensate Akerman for its work and

to cover fixed and routine overhead expenses.  It is Akerman's policy to charge its clients in all

areas of practice for expenses incurred in connection with the client's case.    The expenses

charged to clients include, among other things, photocopying, witness fees, travel expenses,

certain secretarial and other overtime expenses, filing and recording fees, long distance telephone

calls, postage, express mail and messenger charges, computerized legal research charges and

other computer services, and expenses for "working meals."  Akerman will charge the Debtors

for these expenses in a manner and at rates consistent with charges made generally to its other

clients, subject to this Court's approval of such expenses pursuant to the Bankruptcy Code, such Bankruptcy Rules as may from time to time be applicable, such Local Rules as may from time to time be applicable, and such procedures as may be fixed by order of this Court. Akerman believes that failure to charge these expenses would require the firm to increase its current hourly rates.

25.    In addition, Akerman intends to seek compensation for all time and expenses associated with its retention in accordance with sections 330 and 331 of the Bankruptcy Code and any orders of this Court, including the preparation of this Application, the Houser Declaration, the 2016 Statement, and related documents, as well as any monthly fee statements or interim or final fee applications.

26.    Other than as set forth herein, there is no proposed arrangement to compensate Akerman. Akerman has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the shareholders, counsel, and associates of Akerman, or (b) any compensation another person or party has received or may receive.

### Prepetition Payments to Akerman

27.    During the ninety (90) day period prior to the Petition Date, Akerman received from the Debtors an aggregate of $514,178.10 for professional services performed and expenses incurred. In the one year prior to the Petition Date, Akerman received a total of $1,464,839.45 in reimbursement for legal services and expenses from the Debtors. As of the Petition Date, Akerman holds no client fund which could constitute a postpetition retainer.

### Request for Approval of Retention of
### *Nunc Pro Tunc* as of Petition Date

28.      The Debtors request that Akerman's retention be made effective *nunc pro tunc* as of the Petition Date in order to allow Akerman to be compensated for the work it performs for the Debtors following Petition Date and prior to the Court's consideration of this Application. With the filing of the Debtors' Chapter 11 Cases, Akerman will immediately have to turn its attention to urgent matters including, but not limited to, certain corporate matters. The Debtors submit that under the circumstances, retroactive approval to the Petition Date is warranted. *See, e.g.*, *Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

### Notice

29.      Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Senior Debt Holders; (c) creditors holding the thirty (30) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (d) those parties requesting notice pursuant to Rule 2002; (e) the Office of the United States Attorney General for the District of Delaware; (f) the Internal Revenue Service; and (g) the Securities and Exchange Commission.

### No Prior Request

No previous application for the relief sought herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated: September 19, 2013

PMGI Holdings Inc., *et al.*,
*Debtors and Debtors-in-Possession*

*/s/ Ezra Shashoua*
Ezra Shashoua
Chief Financial Officer